## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CASSANDRA M. PRUITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO.: _____ |
| CITY OF ATLANTA, | ) | |
| SGT. JOHN T. ELLIS, and | ) | |
| LT. MICHAEL S. KREHER, In | ) | |
| Their Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Cassandra M. Pruitt, and files this, her complaint and jury demand, showing the Court the following:

## NATURE AND PURPOSE

1.

This is an action for sex discrimination and sexual harassment and retaliation arising out of Title VII of the Civil Rights Act of 1964 as amended, including the Civil rights Act of 1991, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. 1981A ("Title VII"), as well as under the Equal Protection Clause of the United States Constitution, 42 U.S.C. § 1983 and state law against the City of Atlanta. Plaintiff also brings claims for assault and battery and intentional infliction of emotional

1

distress against Sgt. Ellis and Lt. Kreher, as well as a claim against them in their individual capacity under 42 U.S.C. § 1983 and the United States Constitution Equal Protection Clause. Plaintiff seeks declaratory and injunctive relief, back pay and front pay, compensatory and punitive damages, attorney's fees and costs.

## PARTIES

2.

Plaintiff, Cassandra Pruitt ("Officer Pruitt" or "Plaintiff") is, and has been at all times relevant hereto a citizen of the State of Georgia residing in Fulton County, Georgia.

3.

Defendant, City of Atlanta ("City of Atlanta" or "Defendant") is a political subdivision of the State of Georgia and a resident of the State of Georgia and is subject to the jurisdiction of this Court.

4.

Defendant, City of Atlanta, may be served with process through its Mayor Kasim Reed at his business address, 55 Trinity Avenue, Atlanta, GA 30303.

5.

Defendant, City of Atlanta, does business in Georgia, including the employment of Ms. Pruitt as a Police Officer in the Atlanta Police Department.

6.

Defendant, Sergeant John Ellis ("Sgt. Ellis" or "Defendant") is a citizen of the State of Georgia and is being sued in his individual capacity. Sgt. Ellis is a supervisor in the Atlanta Police Department and at all times pertinent to this action was acting under color of state law.  Sgt. Ellis is subject to the jurisdiction of this Court.

7.

Defendant, Sgt. Ellis can be served by delivering a copy of the Summons and Complaint at 226 Peachtree Street, Atlanta, Georgia 30303.

8.

Defendant, Lt. Michael Kreher ("Lt. Kreher" or "Defendant") is a citizen of the State of Georgia and is being sued in his individual capacity.  Lt. Kreher is a supervisor in the Atlanta Police Department and at all times pertinent to this action was acting under color of state law.  Lt. Kreher is subject to the jurisdiction of this Court.

9.

Defendant, Lt. Kreher can be served by delivering a copy of the Summons and Complaint at his business address, 226 Peachtree Street, Atlanta, Georgia 30303.

## JURISDICTION AND VENUE

### 10.

The claims herein present Federal questions, and jurisdiction of this Court is predicated under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331, 1337, and 1343(a)(4).

### 11.

Venue is proper, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).  The unlawful employment practices alleged below were committed in the Northern District of the State of Georgia.

## COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES

### 12.

Plaintiff filed a timely charge of discrimination against the defendants at the Atlanta District Office of the Equal Employment Opportunity Commission ("EEOC") on December 23, 2011. Plaintiff received a notice of right to sue from the EEOC within the last 90 days and has complied with all other conditions precedent to the institution of this lawsuit and the claims herein.

### 13.

Within the current or proceeding calendar year with respect to the discrimination alleged herein, Defendant City of Atlanta employed in excess of 500 employees for at least twenty (20) weeks.

## FACTUAL ALLEGATIONS

### 14.

On September 19, 2002, Officer Pruitt entered the Fulton County Police Academy and completed the basic law enforcement mandate training on February 25, 2003.

### 15.

On February 26, 2003, Officer Pruitt began her employment as a patrolwoman for the Fulton County Police Department and continued her employment with the Fulton County Police Department until June 26, 2009, including working Vice, Crime Suppression, Narcotics and C.O.P's unit.

### 16.

Wanting a change, Officer Pruitt moved to Dallas, Texas in September 2009 and continued her law enforcement career by attending the Texas Law Enforcement Academy in Mesquite, Texas. Officer Pruitt successfully completed her training and became a certified law enforcement officer in the State of Texas where she remained until February 2010.

### 17.

After returning to Atlanta, Georgia Officer Pruitt attended the Atlanta Police Academy in its Lateral Transfer Program.   After successfully completing the

academy, Officer Pruitt was sworn in as a City of Atlanta Police Officer on December 2010.

18.

On January 16, 2011, Officer Pruitt began her employment with the City of Atlanta Police Department in the Field Operations Division where she remained until June 2011.   In June 2011, Officer Pruitt was assigned to the Criminal Investigations Division (CID), Vice Unit where she made numerous street level prostitution arrest, conducted numerous prostitution details in hotels and participated in under cover capacity working with Home Land Security during the occupy Atlanta riots .  Throughout her law enforcement career and as a member of the Atlanta Police Department, Officer Pruitt received several commendations and Officer of the Week Honors.

19.

On October 28, 2011, the Atlanta Police Department, Vice Unit conducted a prostitution detail at a downtown Atlanta hotel.  During the detail, Officer Pruitt and another male officer, Mason Mercure  were operating as undercover decoys in making transactions with suspected prostitutes.

6

20.

During this operation, Officer Pruitt went to Sgt. Ellis, the supervisor on the detail, and advised him that the suspect was reluctant to enter into the transaction unless she and Mercure got nude. Officer Pruitt who had not been "fit trained" as required by the police departments Standard Operating Procedure (S.O.P.) went to Sgt. Ellis in order to determine the S.O.P. regarding getting nude. Sgt. Ellis advised Officer Pruitt that getting nude was not a violation of S.O.P. and that if she had to get nude he would personally destroy the video evidence so that no one would see the nude video evidence.

21.

Following the directions of her supervisor Sgt. Ellis and relying on his assurance that the video of her nude body would be destroyed, Officer Pruitt, in order to make the prostitution case, undressed down to her panties and once the prostitute was fully nude, Officer Pruitt removed her panties. Once Officer Pruitt and Officer Mercure made the case against the prostitute, they gave "The Take Down" signal "Swallow".

22.

While the operation was taking place, Sgt. Ellis and several other officers were in an adjacent room watching the operations from a clock radio used as a

recording device. Officer Pruitt and Officer Mercure gave the take-down signal several times before the other officers finally entered the room to arrest the suspect. Upon entering into the room, Sgt. Ellis instead of insuring the safety of the officers involved in the operation turned around to look at Officer Pruitt's nude body as she ran into the bathroom.

23.

Upon information and belief, Sgt. Ellis despite hearing the take down word, told the "take down" officers to wait so that he could get a good look at Officer Pruitt's nude body. In not immediately responding to the take-down signal, Sgt. Ellis's actions unnecessarily put Office Pruitt and Officer Mercure's safety at risk.

24.

During the prostitution operation, Officer Pruitt used a 'key fob' to record the operation. The key fob was positioned by Officer Pruitt so that the entire operation could be recorded including recording Officer Pruitt's fully nude body. As per S.O.P., Officer Pruitt turned the key fob over to Sgt. Ellis.

25.

Several days after the prostitution detail, Lt. Kreher showed the video of the detail depicting Officer Pruitt's nude body to several officers in Homeland Security and several high ranking police officers, including Majors and the Chief of Police.

26.

Officer Pruitt later discovered that there were two recordings of the operation, one from the clock radio and one from the key fob she used. Upon information and belief, Lt. Kreher kept these recordings, along with other recordings of Vice Operations, in his desk and not in property where the evidence belongs.

27.

Despite Sgt. Ellis' assurance that the video would be destroyed, several copies of the video showing Officer Pruitt's nude body were made. In addition, the key fob, which contained video of show more of Officer Pruitt's fully nude body, is missing and has not been located by the Atlanta Police Department as of the date of the filing of this lawsuit.

28.

Upon information and belief, the Atlanta Police Department has a custom and practice of allowing supervising officers to keep video evidence in their possession as oppose to securing the video in the evidence/property room. This practice unnecessarily puts the vice officers at risk who are trying to make cases that could be thrown out because of spoilage of evidence and chain of custody issues, not to mention the potential violation of the constitutional rights of the numerous suspects arrested by the Vice Unit.

29.

Officer Pruitt was so disturbed upon learning that several male officers not involved with the vice detail, had seen her nude body and that the key fob was missing along with , Lt. Kreher's refusal to take action that she showed up to work wearing her former employer, Fulton County Police Department uniform.

30.

The City of Atlanta Police Department's policy mandates that complaints of sexual harassment be reported immediately. Officer's Pruitt attempts to have her sexual harassment complaint address formally was denied by Lt. Kreher which forced her to seek out a female supervisor out of her chain of command to formally complain.

31.

Per City of Atlanta Police Departments S.O.P., Officer Pruitt filed a Complaint with the Office of Professional Standard ("OPS") On November 3, 2011. As part of its investigation, OPS would obtain a statement from the complaining officer along with the names of any witnesses.  The Officer, who is the subject of the complaint, would then have an opportunity to respond both in writing and in person.

32.

In most instances, the officer investigating the complaint is lower in rank than the officer that is the subject of the complaint.  Likewise, the supervisor of the investigating officer in many instances is also lower in rank than the officer who is the subject of the complaint.

33.

Although the OPS investigation is supposed to be confidential, information is routinely released about the complaint throughout the police department and in Officer Pruitt's case to the press.  The OPS procedure discourages officers from coming forward either to make a complaint or to give truthful statements as witnesses. The OPS investigation procedure is ineffective in addressing complaints because the investigators are asked to investigate higher ranking officers who have

the ability to make decisions that affect their employment with the City of Atlanta and career within the Police Department.

34.

In instances where the investigation findings support the allegations made by the complaining officer, higher ranking commanding officers would regularly recommend reversal of the investigators findings sustaining the allegations in order to protect their colleagues.

35.

The OPS investigation process involves widespread lying by officers in the Atlanta Police Department. Although the police department's regulations mandate dismissal regarding untruthfulness, action is seldom taken against senior high ranking officers who have been untruthful. The City of Atlanta's policy and custom make it impossible for OPS to conduct a thorough and meaningful investigation into individual conduct of officers regarding violations of Work Rules and the 'clearly established' rights under the United States Constitution and Georgia State Constitution.

36.

The aforementioned practice of conducting review of officers' complaints was done pursuant to official policy or custom and usage of the Atlanta Police Department.

37.

The pursuant to the policy and custom of the City of Atlanta, OPS's investigation into Officer Pruitt's complain  exonerated  Lt. Kreher and  only sustained a violation  of responsibilities of supervision against Sgt. Ellis.

38.

In  November  2011  until  July  2012,  Officer  Pruitt  was  sent  home  on administrative leave while Lt. Kreher and Sgt. Ellis were allowed to continue in their job duties.   Prior to going out on leave, Ms. Officer Pruitt filed a sexual harassment with the HR department of the City of Atlanta.

39.

On December 23, 2011, Officer Pruitt filed a Charge of Discrimination, Sexual Harassment against the City of Atlanta, including Lt. Kreher and Sgt. Ellis. Despite being the subject of EEOC complaint and in violation of S.O.P., Lt. Kreher ordered Officer Pruitt to come to his office to retrieve any video evidence that she

needed for Court directly from him and thus exposing her to further humiliation and harassment.

40.

In July 2012 when Officer Pruitt returned to work, she was assigned to the remedial task involving checking vehicle identification numbers on vehicles impounded by the City of Atlanta Police Department in fleet management where she remained until January 2013.

**COUNT I**

**SEXUAL HARASSMENT – TITLE VII AGAINST CITY OF ATLANTA**

41.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

42.

Plaintiff was subjected to sexual harassment by Sgt. Ellis and Lt. Kreher, her immediate supervisors, for which Defendant City of Atlanta is liable.  At all times relevant to this action, Defendant City of Atlanta knew or should have known of the Defendant Officers sexual harassment of Plaintiff and the existence of a hostile work environment, but failed to take immediate remedial actions to protect Plaintiff.  Instead, Defendants allowed a sexually harassing hostile work

14

environment to exist.   Defendant's actions constitute unlawful intentional sex discrimination and sexual harassment in violation of Title VII of the Civil rights Act, as amended.

43.

Defendant City of Atlanta willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

44.

As a result of City of Atlanta and the Defendant Officers' unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL STRESS

## AGAINST SGT. ELLIS AND LT. KREHER

45.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

46.

Sgt. Ellis and Lt. Kreher intentionally, maliciously, wantonly and in gross and reckless disregard for Plaintiff's health and safety, engaged in extreme and outrageous conduct when they subjected Plaintiff to sexual harassment causing

15

Plaintiff to suffer great emotional distress, mental anguish, loss of income, humiliation, and other indignities.

## COUNT III

## NEGLIGENT SUPERVISION

47.

The following paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

48.

At all times relevant hereto, Defendant City of Atlanta knew or should have known that the Sgt. Ellis and Lt. Kreher were using improper motives to assign, transfer, promote and terminate employees.

49.

The City of Atlanta negligently Supervised Sgt. Ellis and Lt. Kreher and allowed them to carry out their discriminatory and unlawful acts.

50.

As a direct, proximate and foreseeable result of the City of Atlanta's negligence, Plaintiff was Sexually harassed, intimated, had her privacy invaded, retaliated against and reassigned to remedial tasks. Plaintiff has suffered and

continues to suffer lost wages, damages and benefits for which the City of Atlanta is directly liable, strictly liable, liable by proxy and vicariously liable.

## COUNT IV

## NEGLIGENT RETENTION

### 51.

The following paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

### 52.

Pursuant to O.C.G.A. § 34-7-20, an employer "is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency."

### 53.

At all times relevant hereto, Defendant City of Atlanta knew or should have know that Sgt. Ellis and Lt. Kreher, based on the numerous complaints to OPS both from within the City of Atlanta, including a complaint from former Mayor Shirley Franklin and the public at large that by retaining these Defendants as police officers and supervisors it was reasonably foreseeable that they would injure others in the performance of their duties.

54.

Defendant City of Atlanta is liable for hiring and or retaining these Defendants when it knew, or in the course of ordinary care, should have known they were not suited for the particular employment.

55.

As a direct, proximate and foreseeable result of City of Atlanta's negligence retentions of these Defendants, Plaintiff was Sexually harassed, intimated, had her privacy invaded, retaliated against and reassigned to remedial tasks, Plaintiff has suffered and continues to suffer lost wages, damages and benefits for which the City of Atlanta is directly liable, strictly liable, liable by proxy and vicariously liable.

## COUNT V

## DEPRIVATION OF FEDERAL RIGHTS UNDER COLOR OF STATE LAW IN VIOLATION OF 42 U.S.C. § 1983 BY ALL DEFENDANTS

56.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

57.

Defendants have violated Plaintiff's federal rights protected by the Federal Constitution and by Federal Statutes or regulations under color of state law, ordinance, regulation, custom or usage of the City of Atlanta in violation of 42 U.S.C. § 1983.

58.

The violation of Plaintiff's rights came about by the actions of Sgt. Ellis, Lt Kreher and the City of Atlanta under color of regulations, custom, policy or usage of the City of Atlanta as described above, as well as the City's custom and policy of not adequately training all its officers or investigating officers conduct.

59.

The conduct of Defendants in harassing, discriminating against, and retaliating against Plaintiff was based upon her sex, female, in violation of Plaintiff's rights to equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution.

60.

This violation of rights was ongoing, and Defendants continued to violate Plaintiff's rights by acting under color of state law and local ordinances, regulations, customs, and usages of the City of Atlanta throughout the time period

Plaintiff Pruitt was employed by the City of Atlanta, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands a TRIAL BY JURY and for the following relief:

(a)     A declaratory judgment that Defendant City of Atlanta has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981A; and

(b)     An injunction prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII of the Civil Rights Acts, as amended, 42 U.S.C. § 2000e *et seq.* and U.S.C. § 1981A; and

(c)     Full back pay from the date of Plaintiff's administrative leave, taking into account all raises to which Plaintiff would have been entitled but for her administrative leave, and all fringe and pension benefits of employment, with prejudgment interest thereon; and

(d)     Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for her emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages; and

(e)     Compensatory and punitive damages against Sgt Ellis and Lt Kreher; and

(f)     The City of Atlanta be required to change the policy, procedures and practices involving the investigation of sexual harassment charges, and complaints to OPS; and

(g)     Reasonable attorney's fees and costs; and

(g)     Such other and further relief as this Court deems just and proper.

This 18th day of April, 2013

        Respectfully submitted,

        **THE BURKE LAW GROUP, LLC**

        By: _____

          E. Earle Burke
          Georgia Bar No. 095550
          Attorney for Plaintiff

199 Peters Street, Suite A
Atlanta, GA 30313
Telephone: (404) 688-1210
Facsimile:  (404) 688-1251
Email: eburke@burkelawatl.com